UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IN RE HOOSICK FALLS PFOA CASES,                    1:19-MC-0018
                                                                   (LEK/DJS)


_____

**DANIEL J. STEWART**
**United States Magistrate Judge**

### DECISION and ORDER

Counsel for Defendant Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") has filed a Motion with this Court to quash a deposition subpoena issued to Lauren Alterman, Esq., Saint-Gobain's former in-house counsel. Dkt. No. 79. According to the documentation supplied with the Motion, it appears that Ms. Alterman was employed for over 10 years to provide legal counsel for Saint-Gobain, and Saint-Gobain asserts that this representation included discussions relating to Perfluorooctanoic Acid ("PFOA") and other litigation related issues. Dkt. No. 79-1 at p. 1. In 2008, Ms. Alterman's position changed, and she became Vice President of Environmental, Health, and Safety ("EHS") for the Company. *Id.* While the PFOA contamination in Hoosick Falls was discovered in 2014, after her change of position, Defendant objects to this attorney deposition for a myriad of reasons. Defendant notes that Edward Canning, the Global Director of EHS for Saint-Gobain, has already been deposed for two days, and that numerous other depositions have been conducted. It is not clear, Defendant asserts, what additional facts could be added by Ms. Alterman. Moreover, the danger of disclosure of attorney-client information is asserted to be great in comparison with the minimal factual testimony that

- 1 -

might be provided. *Id.* at p. 10. Saint-Gobain notes that the attorney-client privilege attaches both to communications between Alterman and her client, as well as facts learned during that attorney-client representation. The difficulty in parsing out the limited factual information that she may have acquired solely after 2008, with questions about the justification of the Company acting or failing to act during that time period, which may well be based upon legal strategies discussed or considered regarding PFOA contamination while Ms. Alterman was Defendant's counsel, would make any deposition of her a procedural nightmare, and ultimately of limited use. *See generally id.* at pp. 7-10.

Defense counsel also notes that the deposition of Ms. Alterman has been attempted in other PFOA cases, including a matter presently pending in New Hampshire. In fact, a motion identical to the one filed here was submitted to Judge Laplante in the *Brown* matter, and he concluded that the plaintiffs had not made a sufficient showing to warrant such a deposition. *Brown v. Saint-Gobain Performance Plastics Corp.*, 2022 WL 122609, at *3 (D.N.H. Jan. 7, 2022) ("During the conference, the plaintiffs asserted that certain topics they seek to discuss with Alterman are nonprivileged and unique to Alterman because they pertain to her Vice President position, and not her legal position, at Saint-Gobain. Based on this record, however, the court finds that there are potential overlaps between Alterman's legal and business roles. Thus, the plaintiffs have not made the requisite showing to justify Alterman's deposition. The court therefore grants the defendants' motion to quash the deposition."). This Court was also advised at the most recent conference that an additional deposition subpoena for Alterman had been issued in

a Vermont PFOA matter but has been voluntarily withdrawn because of the settlement that was reached in that case. *See Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-CV-125, Dkt. No. 481 (D. Vt. April 18, 2022).

Plaintiffs oppose the Motion to Quash and request that the Alterman deposition go forward. Dkt. No. 85. They note that when PFOA contamination was originally discovered in Hoosick Falls in 2014, Saint-Gobain indicated to others that Ms. Alterman would have knowledge of the situation and was a resource to answer questions. Dkt. Nos. 85 at p. 1 & 85-2 at pp. 2-3. They also point out that Ms. Alterman was no longer performing any significant legal work after 2008, and that at any deposition they would not seek to ask her questions regarding her activities or responsibilities as in-house counsel. Dkt. No. 85 at p. 2. Instead, Plaintiffs intend to ask questions regarding Saint-Gobain's corporate-wide efforts to remediate PFOA contamination in general, and at the Hoosick Falls site in particular. *Id.* at p. 4. Plaintiffs believe that Ms. Alterman may also have information concerning a "Dispersion Processor Material Balance Project," (DPMBP) Study issued in 2005 that may be relevant to the fabric coating process performed at the Hoosick Falls facility and the emission of chemicals into the community groundwater. *Id.* at pp. 4-5. Other witnesses asked about this report indicated it was never provided to them, and the Director of Environmental, Health, and Safety from 2016 to 2018, Mr. Canning, was apparently unable to explain why the Company did not conduct testing at the site. *Id.* at p. 5. Plaintiffs also seek to question Ms. Alterman regarding the findings of a "C-8 Science Panel," and to testify concerning the Company's reaction to the findings. *Id.* at p. 6. Further, she could testify concerning Defendant Saint-

- 3 -

Gobain's response to the discovery of contamination at the Hoosick Falls site, and why Saint-Gobain initially denied there were any health effects associated with exposure to PFOA and delayed providing bottled water to the community until 2015. *Id.* Finally, she could review the Defendant's privilege log regarding corporate documents and opine as to whether the documents were properly withheld. *Id.* at p. 16.

Despite the otherwise lenient standard for discovery, depositions of opposing counsel are generally "disfavored" although not prohibited. *United States v. Yonkers Bd. of Educ.*, 946 F. 2d 180, 185 (2d Cir. 1991); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) ("[T]he fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered."). In determining whether the deposition of an attorney is appropriate in a particular case, the court should consider factors including "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *In re Friedman*, 350 F.3d at 72. In distinguishing its position from the more rigid approach adopted by the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the Second Circuit noted that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Id.* The burden of persuasion on the

motion to quash is borne by the movant. *Dukes v. NYCERS*, 331 F.R.D. 464, 469 (S.D.N.Y. 2019). Ultimately, the decision to quash a subpoena is entrusted to the sound discretion of the Court. *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000).

In an exercise of that discretion, this Court grants the present Motion to Quash. At the onset, it is evident that the New Hampshire District Court applied the more rigid *Shelton* standard in making its determination, rather than the standard applicable in this Circuit, as outlined above. *Brown v. Saint-Gobain Performance Plastics Corp.*, 2022 WL 122609, at *2. Nevertheless, on review of the documents and considering the arguments of counsel, this Court agrees with the opinion of Judge Laplante that, based upon the present submissions, the deposition of former in-house counsel Lauren Alterman, Esq., is not justified. With regard to the specific acts performed by Saint-Gobain after discovery of PFOA contamination in Hoosick Falls, or what documents were provided or were not disclosed, those are facts that can presumably be obtained from witnesses other than Ms. Alterman, or through some other discovery device. The desired inquiry appears to be testimony from Alterman as to why Saint-Gobain did or did not act in a particular manner, or share certain information, after the discovery of PFOA in Hoosick Falls, but it is likely that her response to those questions may well involve a mixture of information that she received, or strategy that was developed for anticipated litigation, while she was in-house counsel and acting in her role as attorney. As to those questions her status cannot be easily dissected into that of purely a fact witness. Further, the DPMBP Study was issued in 2005, while Ms. Alterman was active as in-house counsel. With regard to the Plaintiffs' proposed response challenging Saint-Gobain's privilege log, the concept of deposing a

former counsel to review the list and comment on its correctness is unheard of by this Court. Any dispute regarding the log is most often resolved by, after a sufficient showing, an *in camera* review.  Finally, the actual procedure for the attorney deposition "carr[ies] the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only end up imposing additional pretrial delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011).  It seems likely that the only way to manage this deposition would entail this Court attending the proceeding in person and issuing rulings on most questions which the Court believes would be a significant burden on all involved.  At the present time, therefore, the need for this deposition has not been established.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Defendant Saint-Gobain's Motion to Quash the Subpoena of former in-house counsel Lauren Alterman, Esq. (Dkt. No. 79) is **GRANTED**; and it is further

**ORDERED**, that the requests to file certain documents related to this Motion under seal (Dkt. Nos. 80 & 88) are **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**SO ORDERED**.

Dated:  February 9, 2023
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge